CAMPBELL, Acting Chief Judge.
Appellant, Helen Miller Hobbs, challenges the final declaratory judgment which concluded that appellee, Grace E. Kearney, held a perpetual easement over appellant’s property. The final judgment interpreted the easement to implicitly grant to Kearney, in perpetuity, the right to construct or use a later-constructed boat dock at the eastern end of the easement into the waters of Lemon Bay. We reverse the final judgment insofar as it found an implicit perpetual easement to use or construct a boat dock.
On April 29, 1977, Kearney and Hobbs entered into a contract in which Kearney was to purchase from Hobbs a Gulf-front residence on Manasota Key. Access to Manaso-ta Key and to the properties involved is by means of a county road. The county road runs between the Gulf-front property being purchased by Kearney that lies west of the road and property east of the road being retained by Hobbs. Lemon Bay forms the eastern boundary of the property retained by Hobbs. Before entering into the contract of sale, Kearney informed Hobbs of Kearney’s desire to purchase Gulf-front property with an access to a dock for keeping a boat on the Lemon Bay side of the “Island” (Manasota Key). The contract of sale provided that Kearney’s purchase of the Gulf-front property would include “an easement across the South 3 feet of the Seller’s property running from the County Road East to the waters of Lemon Bay....” On May 25, 1977, Hobbs wrote Kearney the following letter:
Dear Mrs. Kearney:
This is to advise that pursuant to our oral agreement concerning the walking easement, boat dock and docking facilities, we agree to the following:
a. A three-foot walking easement over the South portion of my property on the Lemon Bay side shall be an easement contained in the deed, and therefore actually part of the transaction.
b. We shall permit you to build a dock no more than three feet in width at the end of the three-foot walking easement providing that you secure all of the necessary permits to enable you to build this dock at the end of the easement in question.
c. If and when we do develop the Island property in Lemon Bay, we shall permit you to dock a boat free of charge at a docking facility there for so long as you shall own the property being sold to you on the Gulf side.
*147 You, of course, understand that there is no guarantee that we shall develop the Island on Lemon Bay. There are many state agencies which are desirous of prohibiting any sort of seawall facilities from being constructed and thereby making it very difficult when improving any property along waterfront whatsoever. However, the above three situations were those that we discussed and we hereby make them in writing to you.
Closing of the transaction was accomplished by warranty deed from Hobbs to Kearney dated June 7, 1977, conveying the Gulf-front property to Kearney and reserving to the Hobbses “a perpetual walking easement over and upon the South three (3) feet of the above described Parcel # 3 from the Westerly R/W of County Road to Gulf of Mexico.” Simultaneously, a separate easement deed from Hobbs to Kearney granted to Kearney “a perpetual walking easement over and upon the South three (3) feet” of the property being retained by Hobbs and bordered on the west by the County Road and on the east by the waters of Lemon Bay. The easement deed did not include the words “to the waters of Lemon Bay” as did the "contract of sale. It is a common practice in transactions involving the sale and purchase of Manasota Key properties for the parties to grant purchasers of Gulf-front lots easements to Lemon Bay and to grant Bay side lot owners easements to the Gulf of Mexico.
We initially observe that while Hobbs argues that “riparian rights” to Lemon Bay were not granted to Kearney across the Hobbses’ property because the description of the easement in the easement deed did not contain language describing the easement to be “to the waters of Lemon Bay,” we conclude that the presence or lack of presence of such language is not determinative of the rights granted by the easement. Kear-ney, on the other hand, argues that her oral agreement with Hobbs as memorialized by Hobbs’ letter of May 25, 1977 makes “riparian rights” a necessary and incidental part of her easement access to Lemon Bay. She contends that those rights are implicit in the easement deed and that such rights included the right, in perpetuity, to build a dock, or use a dock otherwise constructed, to harbor a boat in order to facilitate access to Lemon Bay.
At oral argument, we attempted unsuccessfully to elicit from the parties a precise definition of the “riparian rights” that are in dispute. Hobbs concedes that the easement grants to Kearney a perpetual walking right of access across Hobbs’ property to Lemon Bay. Hobbs also concedes that Kearney, by reason of the May 25,1977 letter, has a right, separate and apart from the easement, during Kearney’s ownership of her Gulf-front property to dock a boat and otherwise use the dock now located on the Hobbses’ property at the eastern terminus of the easement. Thus, the dispute between the parties is narrowed to the question of whether Kearney has, as a result of the easement deed, a perpetual right to the use of a dock in Lemon Bay or if the right to the use of the dock exists, as a result of the May 25, 1977 letter, only so long as Kearney owns her Gulf-front property.
We conclude that Kearney has not been granted a perpetual right to the use of docking facilities in Lemon Bay. The provisions of the easement deed are clear and unambiguous and must be enforced according to this plain meaning. Richardson v. Deerwood Club, Inc., 589 So.2d 937 (Fla. 1st DCA 1991). While the deed does not contain the precise descriptive words “to the waters of Lemon Bay,” it is otherwise clear from the deed that the purpose of the easement is to allow Kearney walking access across the Hobbses’ property from the County Road to Lemon Bay. It is equally clear that no other rights other than “walking” rights are granted by the easement. The easement is not described as a “boating” or “docking” easement. Kearney argues that her oral agreement and the May 25, 1977 letter from Hobbs makes such additional rights implicit in the easement deed. Even if the oral agreement and the May 25, 1977 letter were meant to grant additional perpetual easement rights other than those clearly expressed in the easement deed, those other understandings would have merged into the deeds as conveyed. Stephan v. Brown, 233 So.2d 140 (Fla. 2d DCA 1970); The Race, *148 Inc. v. Lake & River Recreational Properties, Inc., 573 So.2d 409 (Fla. 1st DCA 1991).
Moreover, we find the letter of May 25, 1977 clear in itself as not evidencing an intent to grant by way of the easement itself more rights than are clearly expressed in the easement. The letter clearly states that the walking easement over the Hobbses’ property “shall be an easement contained in the deed, and therefore actually part of the transaction.” (Emphasis supplied.) The rights concerning docking facilities which then follow in the letter are separately lettered paragraphs and specifically provide docking privileges “for so long as you shall own the property being sold to you on the Gulfside.”
Since no other dock previously existed on the Lemon Bay side of the Hobbses’ property in 1983, Kearney, in accord with the “permission” granted by Hobbs in paragraph b. of the May 25, 1977 letter and with Hobbs’ specific consent, obtained a permit from Sarasota County and constructed a dock that extended into Lemon Bay from the eastern terminus of the easement across the Hobbs-es’ property. Hobbs continued to develop and sell “Island” properties as contemplated by paragraph c. of the May 25, 1977 letter.
In 1991, Hobbs sold property to a buyer named Gillespie. The Hobbses granted the Gillespies an easement over the same South three feet of the Hobbses’ property which specifically provided the Gillespies with the nonexclusive right to use any docks extending easterly from the easement into Lemon Bay. While Kearney would like to engraft the Gillespie easement language into her easement deed, the grants of easement are clearly different. Environmental regulations prohibit construction of more than one dock on the Hobbses’ property on Lemon Bay. Those same regulations require that the one dock allowed may only be constructed into Lemon Bay from the Hobbses’ property at the eastern end of the described easement across the South three feet of their property. The dock also must be limited to two boat slips. In 1993, Hobbs applied for a dock permit from Sarasota County to facilitate access to Lemon Bay. Kearney contested Hobbs’ application which was ultimately granted. Sarasota County, in issuing the dock permit to Hobbs, required the removal of the Kearney dock before the Hobbses’ new dock could be constructed in its place. Hobbs built the dock according to the permit and has allowed Kearney use of the dock free of charge. Kearney acknowledges that Hobbs has fulfilled the obligations of paragraph c. of the May 25, 1977 letter and that she has the right to use the Hobbses’ dock during her ownership of her Gulf-front property. Although Kearney complains that the right to use the dock is not in perpetuity, she was granted no such perpetual rights in the deed that created the easement. Kearney, by reason of her easement deed from Hobbs, has a perpetual walking easement to Lemon Bay over the South three feet of Hobbs’ property. That perpetual easement does not extend to docking rights into Lemon Bay.
Reversed and remanded.
PARKER and FULMER, JJ., concur.